## Calloway v. Bryant.

(Decided July 1, 1924.)

## Appeal from Whitley Circuit Court.

1. Evidence—Writing Alone Must be Resorted to in Construction, if
   Intention Not Dubious or Object Uncertain.—If intention of parties
   as expressed in written contract is not dubious, nor object uncer-
   tain, then writing alone must be resorted to in construction
   thereof.
2. Landlord and Tenant—Lessor Held Not Entitled to Terminate
   Lease by Sale of Part of Building Leased.—Under lease on an
   L-shaped storeroom facing on two streets, reserving right to les-
   sor after expiration of two years to terminate lease, by sale of
   "the said property," held, that lessor was not entitled to terminate
   lease by sale of portion of building affecting only part of store-
   room facing on one street, but could terminate on sale of part of
   building covering all of leased storeroom.
3. Evidence—Where Written Contract Ambiguous or there is Fraud
   or Mistake, Parol Evidence is Admissible.—Rule that intention of
   parties as expressed in written contract must be arrived at from
   writing alone is inapplicable where writing is attacked because
   of ambiguities or on ground of fraud or mistake in its procure-
   ment or in reducing it to writing.

4. Pleading—Demurrer Does Not Admit Truth of Conclusion of Law and Fact.—A demurrer to a petition does not admit truth of mere conclusion of law and fact on part of pleader.

STEPHENS & STEELY for appellant.

TYE & SILER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

May 27th, 1921, the appellee, I. C. Bryant, by a written contract of that date, duly signed by the parties, leased to the appellant, Hugh Calloway, for a term of five years, beginning June 1, 1921, a storeroom situated in Corbin, Whitley county, Kentucky. The writing mentioned is in words and figures as follows:

"This contract, made and entered into by and between I. C. Bryant, of the first part, and Hugh Calloway, of the second part, WITNESSETH:

"That the said party of the first part hereby leases and rents to the said party of the second part the storeroom now occupied by the Bryant Feed Company, in Corbin, Kentucky, with main entrance on the south side of Center street, and the side entrance on Laurel avenue, for a term of five (5) years, at a monthly rental of $50.00 per month. The said first party is to make no improvements in the said storeroom, except a flue, but he will keep the building in repairs. The said first party will pay for the water used in connection with the said storeroom, and the second party will pay for the lights. The rental term will begin June 1st, 1921, and the rental will be due and payable at the end of each month.

"It is mutually agreed by the parties hereto that if at any time after the expiration of two years from June 1st, 1921, the first party should sell the said property, this contract will become null and void at the option of the first party, but the second party shall have at least sixty (60) days' notice of the purpose of the first party to cancel this contract.

"The said second party agrees to take good and proper care of said storeroom, and to return it to the first party at the end of his term in as good condition as received, ordinary wear and tear and natural decay excepted.

"It is agreed by the parties hereto that the said second party shall not sell or assign any part of his term, or underlet or sublet any portion of the said storeroom during the life of this lease, to be used as an undertaking shop, garage, plumbing shop, for fertilizers, poolroom, soft drink stand, moving picture show, or any business that will increase the fire hazard or insurance rate on the said building.

"Executed in duplicate this 27th day of May, 1921."

A diagram of the entire building owned by the appellee, and of which the storeroom leased the appellant is a part, is inserted in the opinion.

It will be seen from an examination of the diagram, that the building is a two-story brick situated on the corner of Center street and Laurel avenue, containing two storerooms on the ground floor, and rooms above,

all under one roof. The rooms on the second floor are reached by a stairway between the two storerooms leading from the pavement on Center street. The storerooms front on Center street; and the one on the corner of Center street and Laurel avenue, designated on the diagram by the latter "A," is occupied by the appellee as a hardware store and was so occupied and used by him at the time the lease contract in question was made. This storeroom has a depth of 40 feet running back with Laurel avenue from that street's intersection with Center street.

It also appears from the diagram that the storeroom leased the appellant by the appellee, designated by the letters "C" and "D," has a depth equalling the entire length of the appellee's brick building from Center street to its rear end, and includes all space in the rear end thereof between its eastern wall and Laurel avenue, running from the eastern wall on a line with the rear wall of the forty foot corner storeroom occupied by the appellee as a hardware store to Laurel avenue; and on Laurel avenue there is also an entrance to the leased premises, which is as much used as the entrance thereto on Center street. That part of the leased storeroom fronting on and having an entrance from Center street, contains the appellant's office as well as merchandise carried in stock; but that part of it fronting on and having an entrance from Laurel avenue, though also occupied by merchandise handled in his business, is mainly used by the appellant for loading and unloading grain and other products purchased and sold by him in such business.

The appellant took possession of the leased storeroom June 1, 1921, and after a continuous occupancy of same by him as a feed store for more than two years, he received from the appellee the following letter:

"Sept. 27th, 1923.

"Mr. Hugh Calloway.

"Dear Sir:

"You are hereby notified that I have this day sold to J. W. Green the building which you now occupy with feed store. Please make arrangement to give possession at the expiration of 60 days, the time set forth in our contract.

"Respectfully,

"I. C. BRYANT."

Upon and after receiving the above letter the appellant refused to yield to the appellee, or to Green, his alleged vendee, the possession of the storeroom, or any part thereof, leased by him from the appellee. This refusal was based on the appellant's interpretation of the clause in the written lease reserving to the appellee the right, after the expiration of two years from June 1, 1921, to terminate the lease by a sale of "the said property" and the giving of sixty days' notice of his purpose to cancel the lease; it being his contention that the words, "the said property," can have no other meaning than that in order to avail himself of such right or option to cancel the lease there must be a sale by the appellee of the entire building of which the storeroom leased to and occupied by the appellant is a part; whereas, what was actually sold by the appellee was not the entire building, nor even the entire storeroom occupied by the appellant, but only that portion of the storeroom occupied by him that fronts on Laurel avenue and is designated on the diagram by the letter "D." That is the part thereof claimed to have been sold by the appellee and is substantially half of the storeroom he leased the appellant unseparated by a partition from the other half, and is as much used and as necessary for use in the conduct of his business, as is that part of the storeroom fronting on Center street.

The situation presented by the facts stated produced a controversy between the appellant and appellee as to their respective rights under the lease in qustion, necessitating a judicial construction of its provision under which the appellee is claiming the right to cancel the contract and deprive the appellant of possession of the entire storeroom. Therefore, to obtain such construction, and also a judicial declaration of the respective rights of the parties as affected by the single question at issue, this action in equity was instituted in the court below under chapter 83, Acts General Assembly, 1922, known as the Declaratory Judgment Act, in which action the appellant was made plaintiff and the appellee the defendant.

The petition contains a copy of the written contract evidencing the leasing of the storeroom in question to the appellant by the appellee; alleges the subsequent sale by the latter of a part of the leased property and the facts showing the controversy that thereby resulted between him and the appellant; their good faith in submitting it

tc the court and the contentions urged by each of them in respect thereto. By the prayer of the petition the court was asked, among other things, to enjoin the defendant (appellee) from attempting to remove the plaintiff (appellant) from the leased storeroom, or any part thereof, occupied by him.

The appellee filed a general demurrer to the petition, and upon the submission of the case thereon, the court by the judgment rendered overruled the demurrer to the petition, to which the defendant (appellee) excepted. So much of the judgment as states the reasons given by the court for this ruling, as well as what it subsequently declared on the matters presented in the petition, is as follows:

"It is the opinion of the court that the word 'property' as used in the second paragraph of the contract referred to, means the property covered by the lease and not the entire building. And it appearing that all the property covered by the lease has not been sold, it is now the opinion of the court, and he so declares, that the defendant is not entitled to remove the plaintiff from the property herein, and that the plaintiff is entitled to hold same under the terms and provisions of his lease and contract set out in the petition. To so much of said declaration and judgment as construes the word 'property' in the second paragraph of the contract to mean only the rooms under lease, the plaintiff objects and excepts and prays an appeal to the Court of Appeals, which is granted. It is therefore adjudged that the defendant herein be now enjoined from removing the plaintiff from the leased property under the terms and conditions set out in the contract herein until the lease expires, or conditions change so as to give him the right and power under his lease to do so. It is further adjudged that the plaintiff recover his cost herein expended."

As the appellant only complains of so much of the circuit court's judgment as construes the words "the said property," appearing in the second paragraph of the contract in question, to mean or apply to the storeroom, or rooms, under lease to him as a feed store, by his prosecution of the present appeal, granted him by that court, he seeks the reversal of that part of the judgment alone.

So the sole question to be considered on the appeal is the proper construction of the words, "the said property," as used in the lease; which question seems to have been fully presented in the court below by the averments of the appellant's petition, the writing evidencing the lease filed therewith, and the demurrer of the appellee to the petition. We entertain no doubt of the correctness of the construction given the words of the lease referred to by the judgment of the circuit court. It is a well known rule of construction, applicable to all written contracts, that if the intention of the parties as expressed therein is not dubious, nor the object uncertain, then the writing alone must be resorted to in the construction thereof. Breckinridge v. Duncan, 2 Mar. 51; Day v. Asher, 141 Ky. 468; Nelson Creek Coal Co. v. West Point Brick & Lumber Co., 151 Ky. 835.

This rule is, of course, inapplicable where the written contract is attacked because of a patent ambiguity or ambiguities in its language, or on the ground of fraud or mistake in its procurement, or in reducing it to writing. It is true there was an attempt made in the case at bar to allege in the petition that in drafting the contract the words, "the said property," were by mistake used instead of others of clearer meaning that would have definitely described the entire building owned by the appellee as the property agreed and required to be sold, in order to entitle the latter to cancel the lease of the storeroom to the appellant; but the facts alleged on that subject are not sufficient to show the alleged mistake, or that it was mutual with the parties. So the unproved allegations referred to are to be regarded as mere conclusions of law and fact on the part of the pleader; therefore, it cannot be claimed that their truth is admitted by the appellee's demurrer to the petition.

"A demurrer is a pleading which imports that the party filing it objects to pleading further, or introducing any testimony, until he obtains the judgment of the court whether the statement of facts made by his adversary in his pleading is such as to require him to answer or proceed further. It admits, for the purposes of the trial of that question, all the facts alleged which are relevant and well pleaded, but does not admit conclusions of law." Newman Pleading & Practice, section 540; Norman v. Ky. Board of Managers, 93 Ky. 537; Comlth. v. Jones, 10 Bush 725.

As in our opinion the contract under consideration is not ambiguous, the intention of the parties must be gathered from its language. There is nothing in the words, "the said property," appearing in the second paragraph of the lease, that gives support to the appellant's contention that they mean, or were intended to apply to, the entire brick building, of which the storeroom or rooms leased by him is a part. There is no ambiguity, patent or latent, in the words thus employed in the lease to designate the property the lessor reserved the right to sell after the two years' continuance of the lease, and no other language elsewhere in the lease that attributes to them any other meaning than that given them by the judgment of the circuit court.

The property leased the appellant by the appellee is described in the contract as "the store now occupied by the Bryant Feed Company, in Corbin, Kentucky, with main entrance on south side of Center street, and the side entrance on Laurel avenue." There is in the writing no reference to or description of the building, as a whole, owned by the appellee, or to that part of it then and now occupied by him as a hardware store, or indeed of any part thereof, except the storeroom or rooms leased the appellant. Therefore, when in the second paragraph of the lease the lessor reserved the right to sell "the said property" after the expiration of two years and cancel the lease to the appellant after sixty days' notice to him the words, "the said property," could have referred to no other property than that leased the appellant.

We can well understand why the circuit court should have held that the right reserved by the appellee in the contract to sell, after two years, the storeroom leased the appellant, did not entitle him to obtain a cancellation of the lease by a sale of a part of the storeroom as attempted by him; for the right to sell the leased premises after two years reserved to him by the contract, was the right to sell the whole, but not less than the whole thereof.

Whether in an action of this character the circuit court had the authority to enjoin the appellee, as was adjudged, from interfering with the appellant's possession of the leased property, is a question not presented for decision by the record, as the appellee has not taken a cross-appeal from that part of the judgment.

It being our conclusion that the circuit court properly construed the contract between the parties and declared their respective rights thereunder, the judgment is affirmed.