## City of Lexington, et al. v. Board of Education of Lexington, et al.

(Decided January 31, 1922.)

### Appeal from Fayette Circuit Court.

Schools and School Districts—School Improvement Bonds.—School improvement bonds, issued under the authority of section 3235a-28,

Kentucky Statutes, which is section 28, of the Acts of 1912, as amended by chapter 57 of the Acts of 1916, applying to cities of the second class, are obligations of the city, and should be executed by the proper officials of the city.

W. H. TOWNSEND and JAMES A. WILMORE for appellants.

HUNT, NORTHCUTT & BUSH for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HURT— Affirming.

The parties to this appeal are the city of Lexington, a city of the second class, Thomas C. Bradley, mayor of the city of Lexington, J. J. O'Brien, commissioner of finance of the city of Lexington, appellants, and the appellees are Board of Education of the city of Lexington, R. D. Norwood, president, J. O. Simrall, business director of the Board of Education.

Under the provisions of section 3235a-28 of Kentucky Statutes, previous to the regular election in November, 1919, the board of education certified to the board of commissioners for the city of Lexington that an election should be held upon the question whether an issue of bonds for school improvement purposes, in the sum of $400,000.00, should be made. The board of commissioners in compliance with the certification and the provisions of the statute, adopted an ordinance submitting the question and the issue of the bonds of the city was authorized by more than two-thirds of the voters of the city who voted at the election. In an action brought by a taxpayer attacking the validity of the election, and the sufficiency of the authorization, it was held by the circuit court that the election was in all respects valid and regular, and that the bonds when issued in pursuance thereto would be valid and binding obligations upon the city, and this judgment was affirmed by this court in Davis v. City of Lexington, 188 Ky. 381. A controversy has however now arisen between the board of education and the commissioners and officers of the city, as to whether the bonds should be prepared in a form showing them to be obligations of the city and should be executed by the mayor and commissioner of finance of the city, or whether they should be executed in a form showing them to be obligations of the board of education and by the president and business director of the board of education. The circuit court held that the bonds

should be issued by the city for and on behalf of the board of education, and should be executed or signed for the city by its mayor and its commissioner of finance, and that the board of education has no authority to execute the bonds, but such duty rested upon the proper officials of the city. From the judgment, the city, its mayor and the commissioner of finance have appealed.

Section 3235a-28, Kentucky Statutes, is section 28 of an act of the General Assembly of 1912 as amended by chapter 57 of the Session Acts of 1916. After providing the manner in which the request for the holding of an election upon the question whether an issue of school improvement bonds shall be made, and the duty of the board of commissioners or general council, in regard to such election, the statute provides as follows:

"If the voters of the city shall determine by a two-thirds majority of those voting that such bonds shall be issued, they shall, when so issued, be placed under the control of the board of education, who shall determine when and at what prices and how they shall be sold, and the date, number of bonds, denomination, whether coupons or registered, the rate of interest and frequency of payment thereof, place of payment of principal and interest and any other details it desires embodied in the bonds or in the ordinance providing for their issue, and shall certify same to the governing body of said city, who shall at once adopt an ordinance in conformity therewith and cause the bonds to at once be properly prepared and executed and turned over to the board of education for sale and delivery; provided, that no such bonds shall be sold for less than par; and provided, further, that any premium which may be obtained from said bonds shall constitute a part of the sinking fund for their ultimate retirement. As the bonds are sold their proceeds shall be placed to the credit of the board of education in the same depository which is selected for its other funds, but shall be kept in a separate account and shall be used only for the purposes for which the bonds were issued.

"It shall be the duty of the general council or of the commissioners, in addition to the levy made for the maintenance of the schools as hereinbefore provided, to levy annually in its tax levy a rate that will raise a sum that shall be sufficient to pay the interest and create a sinking fund for the payment of the bonds at maturity.

The said bonds, principal and interest shall be a charge upon the sinking fund of said city, and it shall be entitled to have the annual tax that shall be levied as aforesaid.''

The terms of the foregoing statute seem to make it clear that the bonds are an obligation of the city and should be executed by the proper officials of the city so as to make them a binding obligation upon it. It will be observed that when the proper certification is made to the general council or board of commissioners by the board of education, the statute requires the commissioners or council to adopt an ordinance submitting to the ''qualified voters of the city'' the question ''whether the bonds of the city'' shall issue for the purpose or purposes designated. When the issue is approved by two-thirds of the voters of the city voting at the election such bonds ''shall be issued, and when so issued be placed under the control of the board of education.'' It will be observed that they are not to be placed under the control of the board of education until after they are issued. The city is required to provide for the levy of a tax to pay the interest and to redeem the bonds as they mature, or provide a sinking fund to retire them at maturity. If the bonds sell for a premium, the premium must be turned over to the city and placed in its sinking fund to aid in the ultimate retirement of the bonds. The proceeds are deposited to the credit of the board of education, but it must keep the proceeds in a separate account from its other funds, and apply them only for the purposes for which the bonds were issued. The bonds, principal and interest are charges upon the sinking fund of the city, and not upon any funds of the board of education, and the city is entitled to the annual tax which it is required to levy to pay the interest and create a sinking fund to pay the principal of the bonds. Thus the city is required by submission to its voters to ascertain whether it shall create the obligation, not of the school district but of the city, and to levy the taxes, collect them and pay the bonds, and in addition to the foregoing, after the ''voters of the city'' have determined that the bonds shall be issued, and the board of education has certified to the board of commissioners or general council its desire with reference to the details of the bonds, their dates, number, denominations, rate of interest and dates of payment, etc., the board of commissioners or general council, ''shall at once adopt an ordinance

in conformity therewith and cause the bonds to be at once prepared and executed and turned over to the board of education for sale and delivery." Manifestly an executed bond is contemplated before it is to be delivered to the board of education. If the board of education was authorized to execute the bonds, the requirement that the commissioners or council should prepare and execute them before delivery to the board of education, would be nugatory and meaningless.

We are not unmindful that this court held, in Coppin v. Board of Education, etc., 155 Ky. 307, that under the statute of 1912 an issue of bonds under section 28 of the act of 1912, was a debt of the board of education in a city of the second class and was not a debt of the city for the purpose of ascertaining whether the city had exceeded the indebtedness prescribed by section 157 of the Constitution, but that opinion was rested upon a clause in section 16 of the act of 1912 which provided that the business director of the board of education should sign all contracts for it "except that bonds issued shall be signed by the president and attested by the business director," and the further fact that section 28 of the act of 1912, as it then existed, is unlike in its terms to the present section as amended, and nowhere in the act was there any provision at that time as to who should execute the bonds issued by the authority of that section, or whose indebtedness it was after the bonds should be issued. As before stated section 28 of the act of 1912 was amended after the opinion was rendered in Coppin v. Board of Education, etc., *supra,* into the form and requirements as heretofore quoted and by an amendment made at the legislative session of 1916, and while section 16 of the act of 1912 is left unchanged, the provisions of section 28, as now amended, expressly require the bonds issued by its authority to be authorized by the voters of the city and executed by the board of commissioners or the general council before delivery to the board of education for sale and delivery. The provisions of section 28 of the act of 1912, as amended by chapter 57 of the act of 1916, was in force at the time the bonds in question were authorized and the steps for their issue taken. It should be further stated that the statute which applied to the issue of such bonds in cities of the second class previous to the year 1912, expressly authorized the board of education to issue such bonds. See section

3219, Kentucky Statutes, 1909. The cases of Jones, Mayor, et al. v. Board of Education, etc., 191 Ky. 198; Rogan v. Board of Education, et al., 192 Ky. 770, did not involve the question herein presented, because in those cases the question of the authority of the boards of education to issue bonds in cities of the third class was under consideration and were rendered under the provisions of statutes totally unlike those which applied to a board of education in a city of the second class in November, 1919. In the first of those cases, the bonds had been authorized in a city of the third class under the statute applying previous to the act of 1920, and in the second of those cases the bonds were authorized in a city of the third class, since the enactment of the act of 1920, applying thereto, which is chapter 53 of the Session Acts of 1920, and the references in the opinions to the law applying to the powers and obligations of boards of eduction in cities of the second class were merely illustrative, and a statement of the principle applying thereto when boards of education in cities of the second class were authorized to issue school improvement bonds and would not have application when such boards of education have not authority to issue bonds under section 28 of the act of 1912, as amended by the act of 1916. The opinion in City of Newport, Ex Parte, 141 Ky. 349, was rendered when the law previous to that of 1912, *supra*, was in force with reference to boards of education in cities of the second class and that statute expressly authorized the board of education in a second class city to issue such bonds, and that opinion would not be applicable now.

It is therefore ordered that the judgment be affirmed. All the members of the court sitting.