## City of Dayton, et al. v. Board of Education of the City of Dayton.

(Decided November 13, 1923.)

### Appeal from Campbell Circuit Court.

1. Schools and School Districts—Municipal Debt Not Considered in Estimating School Debt.—Indebtedness of a municipality is not to be taken into account in estimating the indebtedness of the school board of the district, which covers the same territory.
2. Schools and School Districts—Limit of Indebtedness Not Exceeded by Bond Issue.—Where the revenues which may be derived from an assessment at the highest allowable rate would be more than sufficient to take care of the interest charges on the existing and proposed school bonds, and to create a sinking fund to take care of the principal debt, sale of the bonds, will not raise the indebtedness of the school board or of the city beyond the constitutional limit.
3. Schools and School Districts—Emergency Expenditures Covered by Budget Statute.—Emergency expenditures, such as that necessitated by the breaking down of the heating plant, amounting to $8,000.00, held a part of the legitimate school expenses intended to be covered by the statutes relating to budgets.
4. Schools and School Districts—Delay After Vote Not Abandonment of Right to have Bonds Issued.—A delay of three years by the board of education after bonds were voted, under Kentucky Statutes, section 3490, subsection 34, and section 3587a-20, before certifying the matter to the city council, held not an abandonment of the right to require the city to prepare and authorize the bonds, in view of conditions prevailing in the building trade.

HUBBARD SCHWARTZ for appellants.

C. W. YUNGBLUT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

This action was commenced in the Campbell circuit court by the board of education of the city of Dayton to obtain a mandatory injunction, directing the city of Dayton, its mayor and board of council to levy a tax for school purposes by proper ordinance, at the rate of ninety-five (95c) cents on the $100.00 assessed valuation fixed and certified to the board of council by the board of education in that city; and to cause the same to be added to and included in the regular tax bills of the city containing the ordinary levy, and ordering and requiring the mayor and board of council to at once pass and adopt an ordinance in accordance with the resolution, certified to

it as aforesaid by the board of education, approving and providing for the issual of $75,000.00 in school improvement bonds theretofore voted by the people and to turn the bonds over to the board of education for sale and delivery.

The city defended upon several grounds, among them being its inability, owing to the limitation provided in sections 157 and 158 of the Constitution, to incur an additional $75,000.00 indebtedness by the issual of the bonds, it averring that it then had a bonded indebtedness of $169,500.00, whereas the assessed valuation of its property was only $3,500,000.00, and that when the $75,000.00 of proposed bonded indebtedness be added to the existing indebtedness of the city of $169,500.00, the total would exceed the amount limited and permitted by the Constitution. It also averred in its answer that $8,000.00 of the budget which the school board certified to the council was a repetition and wrongfully and erroneously placed in the budget a second time; that it passed an ordinance levying and providing for the collection and payment to the board of education of 80 cents on each $100.00 of taxable property, according to the assessment and only deducted and eliminated the 15 cents additional tax proposed by the board of education because the council did not deem it necessary in view of the fact it had declined to authorize the bond issue of $75,000.00.

By section 3587a-20, Kentucky Statutes, it is provided that:

"Whenever the board of education shall deem it necessary for the proper accommodation of the schools of such district to acquire or enlarge sites for school buildings, to erect, improve, remodel, rebuild or restore buildings for high schools or for any other school purposes or for the equipment of the same or for any or all these purposes, and the annual funds raised from other sources are not sufficient to accomplish said purpose or purposes, said board shall make a careful estimate of the amount of money required for such purpose or purposes, and it shall certify to the general council or the board of commissioners of said city the fact that an election for an issue of bonds for school improvement shall be held, together with the amount of money for which bonds shall be issued and the purpose or purposes to which the proceeds thereof shall be applied. It shall, thereupon, be the duty of the general council or the board of commissioners to adopt an ordinance, submitting to the qualified

voters of the city at a time to be fixed in said ordinance not less than fifteen nor more than thirty days from the time such certificate is filed with it, the question whether bonds shall so issue for the purpose or purposes aforesaid. The bonds so issued shall be designated as ''school improvement bonds,'' and the ordinance shall fix the time the bonds shall run, and, if a serial issue, then the amount to mature at each time, and limit the rate of interest which shall be permitted on said bonds, which shall not be exceeding six per cent (6%), and the total amount of bonds to be issued and to provide for the levy of a tax to pay the interest and to either redeem the bonds as they mature or to provide for the accumulation of a sinking fund to retire them at their maturity.''

The city is authorized by subsection 34 of section 3490, Kentucky Statutes, to submit the question of indebtedness to the voters:

''If at any time the board of council shall deem it necessary to incur any indebtedness, the payment of which cannot be met without exceeding the income and revenue provided for the city for that particular year, they shall give notice of an election by the qualified electors of the town to be held, to determine whether such indebtedness shall be incurred.''

While it is true that the city of Dayton had a bonded indebtedness of $169,500.00 the board of education had only a bonded indebtedness of $500.00 and on this there was a slight bit of interest. We have held in several cases, including that of Bosworth v. Middlesboro, 190 Ky. 246, and Rogan v. Board of Education, 192 Ky. 770, that indebtedness of a municipality is not to be taken into account in estimating the indebtedness of a school board of the district which covers the same territory.

In other words, a municipal taxing district is subject to the imposition of a tax by one sovereignty, a city, while a different sovereignty, the board of education, may upon its own account levy another although the two cover and include the same territory and property. Aside from this the assessed valuation of the property of Dayton is, according to the record, something more than four million dollars, and the revenue which may be derived from an assessment at the highest rate allowable by law. The basis upon which it must be figured, would be more than sufficient to take care of the interest charges upon the existing and proposed bond issue, and to create and provide a sinking fund to take care of the principal debt.

The issual and sale of the bonds would not therefore raise the indebtedness of the school board or of the city beyond the constitutional limit.

The item of $8,000.00 contained in the budget submitted by the board of education to the city council has not been paid nor was it provided for in the budget for the preceding year. Several emergency expenditures were incurred by the board of education, such as that necessitated by the breaking down of the heating plant in the school building during the winter months, which increased the expenditures of the board $8,000.00 more than the board of education antcipated at the time it made its budget in 1922. These items were not to be foretold. This $8,000.00, however, was a part of the legitimate expenses of the school for the preceding year, and we believe that such expenditures were provided for and intended to be included by the statutes with reference to budgets. Not only this but the municipality through its council has now provided for the payment of the $8,000.00 by the levy of 80 cents, the $8,000.00 being contained in the estimates in the budget which that levy will meet, and is not now in issue.

It is also insisted that the board of education has lost its right to require the city to prepare and authorize the bonds because it has delayed certifying the matter to the board of council for such a long time as to indicate an abandonment of the issue. The bonds were voted in 1919, yet the board of education of the city of Dayton did not call upon the council to prepare and authorize the bonds until April or May of this year, a period of more than three years. The circumstances surrounding the election and the conditions prevailing in the building trades as well as in the schools with respect to the building, have been such that since the voting of the bonds the board of education has postponed from time to time, the issual and sale thereof, but we do not think that under the facts of this case the board of education has been guilty of such laches as would preclude it from exercising its right under the authority granted by the vote of the people to issue the bonds. In such matters the board of education has a discretion which may be exercised within reasonable limits. As no debt is created until the bonds are issued and sold, the taxpayers are not burdened with the indebtedness or the interest thereon until the obligations are actually put on the market. Very often it is to the advantage of the board of education or other muni-

cipality as well as the taxpayers to postpone the sale of bonds, and this may be done provided the board of education is able to provide for the efficient carrying on of the schools. In the case of Young v. Fiscal Court, 190 Ky. 609, we held that the failure of the county to issue the entire amount of bonds voted at an election did not invalidate that part of the issue which was delayed for almost four years thereafter and sustained the right of the fiscal court to cause the balance of the bonds to issue when the funds were found to be necessary. In that opinion are cited cases from other jurisdictions in support of the rule.

We do not think the issual of the bonds has been delayed unreasonably, and the board is now entitled to have the co-operation of the city council in the preparation and issual of the bonds. Frost v. Central City, 134 Ky. 434.

One paragraph of the act of 1920 provides.

"The board of education shall, at the end of each scholastic year, prepare and publish for the information of the public, a report which shall include the annual reports made to the board of the superintendent and secretary, together with such other information as may be proper and necessary to an understanding of the general condition and educational progress of the schools during the preceding year."

Relying upon the foregoing appellant contends that the preparation and publication of the information provided for in the section was a prerequisite to the making of the budget by the board of education and the levy of the tax by the city council to meet the budget. If this were the rule the schools, through oversight or neglect of the board of education in preparation and publication of such report, might be held up indefinitely and no budget prepared or levy made. We regard this section as directory only and not mandatory in its relation to the budget and levy of tax. While it was the duty of the board of education to prepare and publish such report, the levy of the tax was not stayed by the failure of the board to do so.

Appellant's contention that the judgment of the court below sanctions double levy and taxation for maintaining the school in May and June, 1923, and that the item of $8,000.00 was unlawfully placed in the budget, is without merit.

From what has been said it is manifest that the lower court did not err in granting the mandatory injunction

directing and requiring the mayor and board of council of the city of Dayton to meet and make the additional levy of 15 cents and to authorize, prepare and deliver the school improvement bonds voted by the people in 1919 to the amount of $75,000.00, to the board of education for the purposes specified in its certified budget.

Judgment affirmed.