# Hager, Mayor, et al. v. Board of Education of City of Ashland.

(Decided June 8, 1934.)

R. CAMPBELL VAN SANT and HANNAH, VAN SANT & McKENZIE for appellants.

DYSARD & TINSLEY for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In the fall election of 1929, a proposition was duly submitted to the voters of the city of Ashland, a city of the second class, as to whether or not school improvement bonds should be issued by that city to the extent of $500,000 for the purpose of "enlarging and acquiring sites for school buildings and the erection, improvement, remodeling, rebuilding and restoring of buildings for school purposes" in that city. This proposed bond issue was approved by the electorate. The board of education, however, determined to expend at that time only $100,000, and to have issued and sold only $100,000 of the bonds authorized. This was done. No further bonds have been issued under this authorization. On February 27, 1934, the board of education of the city of Ashland, deeming it necessary that funds be procured for additional school improvements which could not be paid out of its annual income, called upon the city to pass the necessary ordinances to issue and sell another

$103,000 of the authorized bond issue of 1929. The board of commissioners of the city of Ashland declining to comply with the request of the board of education, the latter brought this mandamus suit against the board of commissioners to compel them to do so. The issues as presented by the pleadings are these: First. Is the board of education precluded by the lapse of time since these bonds were authorized from requiring the city of Ashland to now issue them? Second. Are these proposed bonds those of the city of Ashland or of the board of education of the city of Ashland? Third. May the proceeds of these bonds be used in part for the furnishings of the proposed buildings to be erected out of the bond issue; these furnishings being auditorium chairs, pupils' desks, teachers' chairs, teachers' desks, principal's desk and chair, and cafeteria equipment, the total cost of which amounts to $10,417? The court below decided the first of these two questions in favor of the appellee, and the third in favor of the appellants. From its judgment in so decreeing, the appellants have prosecuted this appeal, and the appellee a cross-appeal.

First. It is the settled rule that a county or municipality is not required to issue all the bonds voted at an election at one time, but may issue them as needed and a delay in issuing a part or all of the bonds, at least for a reasonable time, does not bar the right to issue them when necessity arises. Thus in the case of Sutherland et al. v. Board of Education of City of Corbin et al., 209 Ky. 351, 272 S. W. 887, the bonds were authorized in 1922 and issued and sold in 1925. Their issuance was upheld. So too in Young v. Fiscal Court of Trimble County, 190 Ky. 604, 227 S. W. 1009, where the bonds were authorized in 1916 and issued and sold in 1921, and in the City of Dayton v. Board of Education of City of Dayton, 201 Ky. 566, 257 S. W. 1021, where the bonds were authorized in 1919 and issued and sold in 1922, and in Nall v. City of Elizabethtown, 200 Ky. 321, 254 S. W. 893, where the bonds were issued four years after they were authorized. In the light of these authorities, and especially that of the Young Case, we cannot say that more than a reasonable time has elapsed since these bonds were authorized and that therefore the board of education is not precluded by the lapse of time from requiring the city of Ashland to now issue them.

Second. This question is important, because if these bonds are bonds of the board of education of the

city of Ashland, they exceed the debt limit prescribed by section 158 of the Constitution, but, if they are bonds of the city of Ashland, they together with the other indebtedness of the city of Ashland, are yet within the debt limit prescribed by the Constitution. That they are bonds of the city of Ashland is settled by the case of City of Lexington v. Board of Education of Lexington, 193 Ky. 566, 236 S. W. 1030, in which the cases relied upon by the appellants, such as Ex parte City of Newport, 141 Ky. 329, 132 S. W. 580, 37 L. R. A. (N. S.) 1034, Ann. Cas. 1912C, 447, and Coppin v. Board of Education of City of Covington, 155 Ky. 387, 159 S. W. 937, are distinguished because of the change of the statute which had occurred since the facts out of which those cases arose took place.

Third. The question propounded to the voters at the election of 1929, when these bonds were authorized, was whether or not the bonds should be issued for the purpose of "enlarging and acquiring sites for school buildings and the erection, improvement, remodeling, rebuilding and restoring of buildings for school purposes" in that city. This was the authority that the voters conferred by their affirmative vote on the question propounded. The authority thus conferred is not essentially different from the statutory authority under which school improvement bonds are issued in cities of the first class. See section 2978b-1, Ky. Stats. Construing that statutory authority, this court in the case of City of Louisville v. Board of Education of Louisville, 229 Ky. 325, 17 S. W. (2d) 210, held that no part of a bond issue voted pursuant to that statutory authority could be used to furnish buildings erected out of the bond issue money. It is true that in the instant case the statutes relative to cities of the second class provide that (section 3235a-28, Kentucky Statutes) "Whenever the board of education shall deem it necessary for the proper accommodation of the schools of such city to acquire or enlarge sites for school buildings, to erect, improve, remodel, rebuild or restore buildings for high schools or for any other school purpose or for any or all these purposes," it may set in motion the machinery looking to a bond issue, and that it may be argued with much to support such argument that this authorization is broader than that of cities of the first class, yet the voters in the instant case were not asked in 1929 as to whether or not they would favor

794

a bond issue to be used for all school purposes, but were only asked as to whether or not they would authorize a bond issue for the purposes hereinbefore set out. The bond issue must be confined to the purposes authorized by the vote of the electorate. Hence it is that the court did not err in holding that no part of this proposed bond issue could be used for the furnishings of the buildings proposed to be erected.

The judgment is therefore affirmed both on the original and cross appeals.

Whole court sitting.